REQUESTED BY: Douglas D. Christensen, Commissioner of Education Senator Ardyce Bohlke, Education Committee Chair
This opinion is written in response to your request for reconsideration and clarification of Op. Att'y Gen. No. 00010. In Op. Att'y Gen. No. 00010, this office stated that the Department of Education ("Department") could not conduct assessment testing on their four content standard regulations for purposes of satisfying the Department's responsibilities under Neb. Rev. Stat. § 79-760 (1998 Cum. Supp.).
 Issues
Your letter indicates that your primary concern is the relationship between mandatory assessment testing required by §79-760 and the State Board of Education's ("State Board") voluntary academic content standards in 94 NAC 1 through 94 NAC 4. On page one of your letter, you state: "We ask you to reconsider whether the statutory requirement to administer a standards-based assessment, by itself, has the effect of legally compelling districts to adopt and implement the standards on which the assessment is based."
You also state in your letter that the Department anticipates rating schools on the basis of their assessment reports. You state on page two of your letter: "We ask you to clarify whether a rating such as `high performing' or `low performing,' with no legal consequences attached, would constitute a legal reward or sanction and, therefore, necessitate that the Department's standards be mandatory and specific."
 Administrative Regulations and Statutes
We will briefly summarize the applicable regulations and statutes. A more comprehensive review of this information is available in Op. Att'y Gen. No. 00010.
The Department's four academic standards are Nebraska Mathematics Content Standards, 94 NAC 1; Nebraska Reading/Writing Content Standards, 94 NAC 2; Nebraska Science Content Standards, 94 NAC 3; and Nebraska Social Studies/History Content Standards, 94 NAC 4. The Department's purpose for adopting these standards is set forth in § 001.01 of all four of these regulations. "The State Board of Education adopts these standards to identify what students should know and be able to do and what teachers should teach." The Attorney General's office conditioned its approval of the regulations upon the Department's use of them as voluntary. The voluntary nature of these regulations is set forth in § 001.02 of all four regulations. "There is no requirement for school districts to adopt standards."
Pursuant to § 79-760, the Department is required to implement a statewide assessment program and public schools are required to participate in the program. Section 79-760 also requires that the aggregate results for each school district be reported to the Department.
The purposes for implementation of the assessment program are:
 (a) Evaluate whether or not students in a school system have acquired skills and knowledge which allow them to meet or exceed academic standards established by the state board;
 (b) Measure progress of students in a school system toward meeting academic standards established by the state board.
 (c) Provide information for analysis of adopted standards and consideration of new standards;
 (d) Allow comparisons to be made between the academic achievement of students in a local system and students in another Nebraska local system; and
 (e) Allow comparisons to be made between the academic achievement of Nebraska students with the academic achievement of students in other states.
Neb. Rev. Stat. § 79-760(2) (Cum. Supp. 1998).
 Analysis
We agree that § 79-760 requires school districts to assess their students using an assessment developed by the Department based on standards established by the Department. We also agree that § 79-760 does not explicitly state that school districts must adopt and implement the Department's academic standards, nor does it require the Department to enforce those standards.
However, the purpose for the annual assessment testing as stated in § 79-760, the legislative history and the Department's assessment materials all indicate that the goal is to measure student progress toward meeting or exceeding the Department's academic standards. How can one make progress toward a standard without incorporating that standard into the curriculum? Other purposes identified in § 79-760 make various comparisons of the academic achievement of Nebraska students and academic achievement is equated with the extent to which students have mastered the academic standards upon which they are tested. Clearly, § 79-760
uses the academic standards upon which students are tested as a basis for determining the performance of public schools and the quality of public education in Nebraska.
There are numerous references in the legislative history to the purposes or goals for conducting assessment testing. Statements before the Committee on Education include the following. "The purpose of the testing is to ensure accountability for student achievement and to measure individual student progress toward academic standards." Introducer's Statement of Intent on L.B. 1228, 95th Leg., 2nd Sess. 2 (Feb. 2, 1998) (statement of Sen. Bohlke). "That would be the statewide test, what I called the accountability test, the assessment and the accountability." Hearing on L.B. 1228 Before the Comm. on Educ., 95th Leg., 2nd Sess. 8 (Feb. 2, 1998) (statement of Sen. Bohlke). "I could even see it coming to the point where we could sell a floppy disk of the information and you could take it as a study group, at the local level, and study whether or not you're in line with what other school districts in the state are doing. . . ." Hearing on L.B. 1228 Before the Comm. on Educ., 95th Leg., 2nd Sess. 8 (Feb. 2, 1998) (statement of Kathleen McCallister, President of the State Board of Education). "The intention would be that there is some measurement that we agree on for a particular subject or a particular grade level so that the notion of comparison of districts in the sense that we want to benchmark ourself against the high-performing district, how do they do what they do and get such high scores in reading?" Hearing on L.B. 1228 Before the Comm. on Educ., 95th Leg., 2nd Sess. 8 (Feb. 2, 1998) (statement of Doug Christiansen, Commissioner of Education). "The purpose of the testing is to ensure accountability for student achievement and to measure individual student progress toward academic standards. The test shall be designed to compare achievement on a statewide and national basis and to enable teachers to evaluate performance of students." Committee Statement for L.B. 1228, 95th Leg., 2nd Sess. 3 (Feb. 2, 1998) (Comm. on Educ.).
There were some brief discussions of the assessment testing portion of L.B. 1228 on the floor of the legislature. "The important thing is having it correlated to our standards that we've adopted, and if they do that, I think it would be close enough to those standards that's really getting at what we're trying to with the bill, and that is to make sure that we have a common reporting and know that schools are working toward those standards and the quality indicators here in the bill." Floor Debate on L.B. 1228, 95th Leg., 2nd Sess. 13809-10 (Mar. 18, 1998) (statement of Sen. Bohlke).
 Senator Crosby, members of the Legislature, we are spending several million dollars developing a statewide test, and the reason that we're doing that, in part, a large part, is to restore the confidence of the public in the education system. And one of the things that has grieved the public, I believe, is their inability to compare school districts, schools within their districts, no means by which to do that, in any sort of realistic way. There is . . . there is no point to spending all this money and having all these requirements if, in fact, the result of what you're doing does not give the public the kind of comparison information that they're asking for."
Floor Debate on L.B. 1228, 95th Leg., 2nd Sess. 13809-10 (Mar. 18, 1998) (statement of Sen. Beutler).
Although § 79-760 does not explicitly state that public schools are required to adopt the academic standards upon which their students are tested, the practical effect of § 79-760 is to impose those standards upon the schools. We see no other purpose which would be served by the assessment testing. The intent of §79-760 is that schools would focus on teaching its students the substance of the academic standards and their progress toward achieving that goal would be measured on an annual basis through assessment testing. Therefore, it would inappropriate for the Department to conduct assessment testing on academic standards which are unconstitutionally vague.
You also ask whether rating the schools on the basis of their aggregate test results, with no legal consequences attached, would constitute a legal reward or sanction necessitating that the Department's standards be mandatory and specific. We have previously stated that the Department cannot test on the four content standard regulations since they contain unconstitutionally vague language. We find no statutory language requiring that the standards be mandatory in order for the Department to implement the assessment testing. We do not consider rating school performance on the assessment testing to be a legal reward or sanction. Although schools are required to participate in the assessment testing, the Department does not have any enforcement authority at this time.
 Conclusion
The legislature has the authority to mandate assessment testing based on academic standards. However, the current standards may not be used for that purpose because they are unconstitutionally vague. This problem could be resolved by the State Board of Education by adopting standards that are not unconstitutionally vague. Although the Department cannot test on the four content standard regulations since they contain unconstitutionally vague language, we find no statutory language requiring that the standards be mandatory in order for the Department to implement the assessment testing. We do not consider rating school performance on the assessment testing to be a legal reward or sanction.
Sincerely,
 DON STENBERG Attorney General
 Charlotte R. Koranda Assistant Attorney General
Approved:
_________________________ Attorney General